CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 2 6 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

ROBERT E. KINNETT,                    )
                                      )
         Plaintiff,                   )
                                      )
v.                                    )        Civil Action No.:    5:18-cv-110
                                      )
                                      )
KEY W + SOTERA DEFENSE                )
SOLUTIONS,                            )        By:    Michael F. Urbanski,
                                      )               Chief United States District Judge
         Defendants.                  )

### MEMORANDUM OPINION

This matter comes before the court on defendant Key W + Sotera Defense Solutions' ("Sotera") motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 2. Plaintiff Robert E. Kinnett ("Kinnett") has also filed three motions, the issues of which are intertwined with those of dismissal. ECF Nos. 25, 26, & 30. Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred this case to United States Magistrate Judge Joel C. Hoppe for a report and recommendation. ECF No. 8. Judge Hoppe recommended Kinnett's motions be denied and Sotera's motion be granted. ECF No. 35. Kinnett filed his objections to the Report and Recommendation on August 5, 2019. ECF No. 37.

For the reasons stated below, the court will **DENY** Kinnett's motions, **OVERRULE** Kinnett's objections, **ADOPT** the Report and Recommendation in its entirety, and **GRANT** Sotera's motion to dismiss.

I.

Sotera is a private employer operating under contract with the FBI. ECF No. 1-2, at 2. Sotera hired Kinnett as a "Web Application Developer" in 2016. Id. Kinnett was assigned to work out of the FBI's Records Management Division office in Winchester, Virginia, where he was responsible for developing web-based business applications for the FBI's Business Operations Support United ("BOSU"). Id. at 2 & 5.

In December 2016, Kinnett and John Haire, another Sotera developer, met with various BOSU staff to discuss plans to create a BOSU Helpdesk application. ECF No. 1-2, at 5. While some concern was expressed regarding whether Timothy Willems, a BOSU supervisor not present at the meeting, would agree to the application, Kinnett was instructed to begin planning and development. Id. Later that month, Willems and Kinnett met at Willems' instigation to "get to know" each other. Id. at 6. As Kinnett alleges in the Complaint, Willems is "very religious," and mentioned during this initial conversation that he had attended a bluegrass concert at a church in Stanley, Virginia, where Kinnett lives. Id. When Willems asked Kinnett what his wife did for work, Kinnett "responded that his husband was currently developing a kiln to heat treat firewood." Id. "Willems was unable to continue the conversation," and Kinnett "continued talking about his husband's work until Mr. Willems was able to regain his composure." Id. Thereafter, Willems "would periodically ask Plaintiff[,] 'So you don't know the church in Stanley with the bluegrass concert?' always with a creepy smile and a little chuckle." Id. Willems's "repeated" "out-of-the-blue" questions made Kinnett "very uncomfortable in his work environment." Id.

Kinnett was asked to give a progress demonstration to Willems on the new BOSU Helpdesk application in March 2017. ECF No. 1-2, at 7. Elizabeth Louch, Kinnett's

supervisor, congratulated him on the presentation; Willems made no comment. ECF No. 1-2, at 5 & 7. The next day, Louch and Dena Barnes, the BOSU project manager, told Kinnett that the application was being abandoned, and that he should revive previous versions. Id. at 7. Kinnett also met privately with Louch, who informed him that he was being placed on a "Performance Improvement Plan" and that he would be working closely with Barnes on a "very aggressive schedule" to which Louch had agreed. Id. at 7.

In March 2017, Barnes instructed Kinnett not to speak or work with Haire, Sotera's other developer. ECF No. 1-2, at 7–8. Kinnett informed Louch about Barnes's instruction, and the two later met with Barnes. Id. Kinnett told Barnes that he thought her instruction violated federal regulations that permit the government to assign projects to contractors, but prohibit the government from directing contractors as to the means of completing the project. Id. Barnes became angry and told Kinnett, "I can do both!" Id. Louch later met privately with some of the BOSU staff members, and it was decided that Kinnett would be permitted to work with Haire on a limited basis, but that he should not interfere with Haire's work. Id.

Kinnett was ultimately able to resolve all issues with the older software on which he was working, with the exception of one issue that he "was unable to resolve due to lack of access." ECF No. 1-2, at 8. He reported this issue to Barnes and received authorization to make changes but was later sent an email accusing him of making unauthorized modifications. Id. While this email was sent by BOSU project owner Mike Dillon, Kinnett believes the email "was dictated by Mr. Willems in an attempt to discredit [him] and create a hostile work environment." Id. On the following day, Louch advised Kinnett not to tell co-workers that Willems did not like him. Id. Not long after, Louch terminated Kinnett's employment. Id. at

8–9. According to Kinnett, she did so "per Mr. Willems' request." Id. After Kinnett was terminated, Willems presented Louch with the resume of a member of his church for consideration to fill Kinnett's position. Id. at 9.

In October 2017, Kinnett filed a charge with the Office of Federal Contractor Compliance Programs ("OFCCP") alleging that Sotera had discriminated against him based on sexual orientation and religion. ECF No. 1-2, at 3. The OFCCP found that Kinnett had not made any allegations of discrimination to Sotera before termination and that Kinnett was fired because three FBI employees had complained about his performance. ECF No. 1-3, at 2–3. The OFCCP thus concluded that there wasn't enough evidence to find that Sotera had "violated its obligations under the nondiscrimination and affirmative action provisions of [Executive Order] 11246," id. at 3, and issued Kinnett a "Notice of Right-To-Sue under Title I of the ADA or Title VII of the Civil Rights Act of 1964," id.

Kinnett filed suit in August 2018 and asserted four claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e: (1) disparate impact religious discrimination; (2) hostile work environment religious discrimination; (3) disparate treatment sex-based discrimination; and (4) retaliation.[1] ECF No. 35, at 5–6; ECF No. 1-2, at 9–14. Sotera moved to dismiss the Complaint on October 23, 2018. ECF No. 2. Following this motion, Kinnett filed two

---

[1] On April 30, 2019, the question of whether Kinnett had exhausted his administrative remedies was addressed before Judge Hoppe. ECF No. 22. On June 3, 2019, the United States Supreme Court issued its decision in Fort Bend County, Texas v. Davis, in which it held that "Title VII's charge-filing requirement" is a mandatory claim "processing rule . . . , not a jurisdictional prescription delineating" the federal courts' adjudicatory authority over a Title VII claim. 139 S. Ct. 1843, 1851. Thus, a court is not obligated to raise the issue on its own, see Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006), and such an objection may be forfeited "if the party asserting the rule waits too long to raise the point,'" Davis, 139 S. Ct. at 1849 (quoting Eberhart v. United States, 546 U.S. 12, 15 (2005)). Sotera did not raise the issue in its Rule 12(b) motion, and it has not challenged Kinnett's position that he satisfied Title VII's exhaustion requirement by filing a claim with the OFCCP. Accordingly, Sotera forfeited its right to object to Kinnett's Title VII claims on those grounds. As such, the court will not address any arguments regarding administrative exhaustion.

supplemental motions—a motion for a ruling on his joint employment status, ECF No. 26, and two motions regarding amending the Complaint, ECF Nos. 25 & 30.

## II.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Techs., Inc., 742 F. Supp.

2d 827, 829 (W.D. Va. 2010) (citing <u>Veney v. Astrue</u>, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)), <u>aff'd</u>, 498 F. App'x 268 (4th Cir. 2012); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 154 (1985(3)) ("[T]he statute does not require the judge to review an issue <u>de novo</u> if no objections are filed.").

Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. <u>See</u> <u>Veney</u>, 539 F. Supp. 2d at 845. As the court noted in <u>Veney</u>:

> Allowing a litigant to obtain <u>de novo</u> review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." <u>Howard</u> [v. <u>Sec'y of Health & Human Servs.</u>], 932 F.2d [505], 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A party who reiterates his previously raised arguments will not be given "the second bite at the apple [ ] he seeks." <u>Id.</u> Instead, the re-filed brief will be treated as a general objection, which has the same effect as a failure to object. <u>Id.</u>

## II.

Judge Hoppe's Report and Recommendation, ECF No. 35, provides recommended rulings for three pending motions: (1) Sotera's Motion to Dismiss; (2) Kinnett's Motion for a Ruling on Joint Employer Status, ECF No. 26; and (3) Kinnett's Motions for Leave to File an Amended Complaint, ECF No. 25 & 30. Judge Hoppe found that Kinnett had failed to state a claim for which relief can be granted in this matter, that his allegation that he was jointly employed by Sotera and the FBI "would not salvage the deficiencies in his original pleading,"

and that his proposed amendments to the Complaint would be futile. ECF No. 35, at 21 & 23. Accordingly, Judge Hoppe recommended that Sotera's motion to dismiss be granted and that Kinnett's remaining motions be denied. Kinnett filed his objections to these findings on August 5, 2019. ECF No. 37.

The court will first address Sotera's motion to dismiss. ECF No. 2. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Absent subject matter jurisdiction, a court must dismiss the action. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 653 (4th Cir. 1999). Whether a plaintiff has standing to bring a cause of action "is generally associated with Civil Procedure Rule 12(b)(1) pertaining to subject matter jurisdiction." CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011). "That is because 'Article III gives federal courts jurisdiction only over cases and controversies,' and standing is 'an integral component of the case or controversy requirement.'" Id. (quoting Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006)). When a defendant raises substantive challenges to a court's jurisdiction under Rule 12(b)(1), the court need not assume the truth of a complaint's allegations and may consider facts outside the complaint to determine if it can properly exercise subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). At all times, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans, 166 F.3d at 647.

Meanwhile, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead

sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A plaintiff establishes "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) (holding the court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments") (internal quotation marks omitted).

## A.

Kinnett asserts two claims of religious discrimination. Generally, to state a discrimination claim under Title VII, a plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). While Kinnett has not alleged membership in any particular protected religious class, this district applies a modified test in cases in which a plaintiff alleges discrimination because he did not share his employer's or supervisor's religious beliefs. Scott v. Montgomery Cty. Sch. Bd., 963 F. Supp. 2d 544, 553–

54 (W.D. Va. 2013) (collecting cases). It was through this lens that Judge Hoppe examined Kinnett's claims; the court will do likewise.

Judge Hoppe, after examining all allegations in the Complaint, recommended dismissing both Count One and Count Two because Kinnett has not plausibly alleged he was discriminated against "because of a discriminatory motive based upon [his] failure to hold or follow h[is] employer's religious beliefs." Scott, 963 F. Supp. 2d at 553–56. Kinnett alleged in the Complaint that Willems was "very religious," and that after Kinnett discussed his husband, Willems awkwardly stopped talking, and thereafter would periodically ask him about a church in his hometown that hosted a bluegrass concert. ECF No. 1-2, at 6 & 10. Kinnett states that this made him "very uncomfortable in his work environment." Id. at 6. Kinnett also asserts that Willems dictated an email to Kinnett sent by Mike Dillon, falsely accusing Kinnett of having made unauthorized modifications to computer software.[2] Id. at 8. Finally, he alleges that Louch terminated his employment at Willems' request and that Willems offered Louch a resume of a church member to consider in filling Kinnett's old position. Id. at 7–8. Judge Hoppe, after observing that Kinnett's allegation that he was fired because his sexuality was incompatible with Willems' religious beliefs is not entitled to a presumption of truth, found that Kinnett failed to allege facts supporting a reasonable inference that the people responsible for his termination were motivated by religious bias. See McCleary-Evans v. Md. Dep't of Transp., St. Hwy. Admin., 780 F.3d 582, 586 ("Here, although Coleman's complaint

---

[2] Kinnett provides no facts supporting this allegation, nor any details as to how he knows this or why he believes it to be true.

conclusorily alleges that [he] was terminated based on his race, it does not assert facts establishing the plausibility of that allegation."). The court agrees.

The first major defect in Kinnett's pleadings is that all allegations are directed at Willems, an FBI employee, while Kinnett was employed by Sotera. ECF No. 1-2, at 5–6. Thus, Kinnett has failed to plead a discriminatory motive on the part of his "employer," Sotera. See Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015) ("An entity can be held liable in a Title VII action only if it is an 'employer' of the complainant."). While Kinnett argues that the FBI's control of his work permits the court to vicariously attribute Willems' alleged motives to Sotera, "[t]he fact that two entities exercised control over one employee does not necessarily render one company liable for the acts of the other's employees." ECF No. 35, at 11. See Lee v. Mattis, Civ. Act. No. PX 17-2836, 2018 WL 3439261, at *35 (D. Md. July 17, 2018) (collecting cases for the proposition that "joint employer liability does not by itself implicate vicarious liability" and "a finding that two companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions") (internal quotation marks omitted). All the same, even assuming that Willems' actions could be attributed to Sotera, Kinnett's allegations do not rise above mere speculation that Willems' behavior was motivated by his religious beliefs. Kinnett alleges that a very religious supervisor paused awkwardly during a conversation that revealed Kinnett's homosexuality and made several comments about his church to Kinnett afterward. As Judge Hoppe found, while this behavior is certainly consistent with religious bias, it is insufficient to permit the court to infer such bias.

The Complaint alleges two separate claims of religious discrimination: disparate impact and hostile environment. Under a disparate impact theory (Count One), Kinnett must point to some employment practice that is "facially neutral in [its] treatment of different groups but that in fact fall[s] more harshly on one group than another and cannot be justified by business necessity." Abdus-Shahid v. Mayor of Balt., 674 F. App'x 267, 274 (4th Cir. 2017). Kinnett never "identified a policy or practice that disproportionately burdened a protected group." ECF No. 35, at 13. "At best, Kinnett asserts that the FBI's control of his project and the means of completing it constitutes an employment practice that had a disparate impact upon him." Id. In support of this allegation, however, Kinnett cites to a single incident in which Barnes instructed him not to work with John Haire, allegedly in violation of federal regulation, without any allegation as to how this incident connects to Willems' alleged bias. Id. at 8. Without some regular practice of an employer that goes beyond "mere occurrence of isolated[,] accidental[,] or sporadic discriminatory acts, Kinnett cannot state a viable claim. Andreana v. Va. Beach City Pub. Schs., No. 2:17cv574, 2018 WL 2182297, at *15 (E.D. Va. 2018).

Kinnett also alleges that he was subjected to a hostile work environment (Count Two). ECF No. 1-2, at 10. "A claim for a hostile work environment is a form of disparate treatment where the employer's discriminatory actions improperly altered 'the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned.'" Jackson v. Deen, 959 F. Supp. 2d 1346, 1352 (S.D. Ga. 2013) (quoting Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir. 2004)). To state a claim for a hostile work environment based on religious discrimination, Kinnett must plausibly allege that the treatment was: (1)

unwelcome; (2) based on religion; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) that there is some basis for imposing liability on the employer. See E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008); Mustafa v. Iancu, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018).

The third of the above elements, that a defendant's conduct be "severe and pervasive," "has both a subjective and an objective component." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). To determine if a work environment was objectively hostile, the court must look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating rather than a mere offensive utterance, whether it unreasonably interferes with work performance, and what psychological harm resulted. See Harris, 510 U.S. at 21-23; Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 193 (4th Cir. 2000). This standard is a "demanding" one. Faragher, 524 U.S. 775, 788 (1998). No one is guaranteed "refinement and sophistication" in their interactions at work. Martin v. Merck & Co., 446 F. Supp. 2d 615, 628–29 (W.D. Va. 2006). Rather, they are protected only from "harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997). Kinnett's principal grievance is that Willems would "periodically" ask him about a church in Kinnett's hometown that hosted a bluegrass concert. ECF No. 1-2, at 6. That Kinnett subjectively found this abusive does not support an objective conclusion that this behavior was "severe and pervasive." As Judge Hoppe reasoned:

> [Kinnett] does not identify any physically threatening or
> humiliating conduct, nor does he state that Willems's comments
> interfered with his work performance. Instead, the isolated or

scattered comments, <u>Mustafa</u>, 313 F. Supp. 3d at 695, served only to make Kinnett "uncomfortable in his work environment" because he perceived those comments as signaling Willems's religious disapproval of his sexual orientation. Willems's comments were, at worst, rude or inconsiderate, but certainly not the type of conduct needed to state a hostile work environment claim.

While certain actions Willems allegedly took, such as the email sent by Dillon but dictated by Willems and the placement of Kinnett on a performance improvement plan, would have a greater impact on Kinnett's employment, but Kinnett does not allege any facts connecting them to either Willems' religious beliefs or Kinnett's sexual orientation. ECF No. 1-2, at 8–9. Without some plausible factual connection, these are simply workplace incidents. Finally, as stated above, Willems was neither an employee nor agent of Sotera, and thus Kinnett fails to meet the fourth element of a hostile work environment.

In his Objections to the Report and Recommendation, Kinnett reiterates the allegations put forth in his Complaint and argues that "previous actions taken by FBI employees . . . show a pattern and practice of creating a hostile work environment for contract employees and violating 48 CFR 37.104 prohibition of personal services contracting." ECF No. 37, at 3. "Contract employees," however, are not a protected class of persons under Title VII; that FBI employees allegedly had a "pattern and practice of creating a hostile work environment" for contract employees does not render Kinnett's claims viable. <u>See</u> 42 U.S.C. § 2000e-2(a) (listing protected classes under Title VII).

Additionally, Kinnett states in his Objections that he complained to Jack Hess (Executive Vice President of National Intelligence at Sotera) and Louch, but neither interceded on his behalf, despite Louch's assurance that "she had gotten nothing but positive feedback

regarding [Kinnett's] performance." ECF No. 37, at 3. Kinnett states that, when he complained about the "personal services contract situation" to Hess, Kinnett "teared up and needed to regain his composure before continuing, to explain the unlawful conditions of his employment," only to have his concerns dismissed offhandedly by Hess proclaiming 'Oh, the FBI is a difficult client.'" Id. at 4. District courts generally do not consider evidence raised in objections to a Report and Recommendation that could have been, but was not, presented to the magistrate judge. United States v. Vega, 386 F. Supp. 2d 161, 163 (W.D. N.Y. 2005). This new allegation that Kinnett complained to an executive at Sotera, unmentioned in the Complaint, vaguely states that Kinnett complained regarding "the personal services contract situation." Whether the complaint Kinnett made included a report of Willems' alleged discriminatory conduct is unclear. The vagueness of this new allegation prevents any plausible inference that Willems' alleged bias should be attributed to Sotera. Neither do these objections provide any connection between the FBI's employment practice as it related to contract employees and Willems' religious bias. Finally, no matter what Kinnett's reaction was to his work environment or to whom he complained, a few "isolated or scattered incidents" does not amount to conduct that is "pervasive enough to state a claim for hostile work environment." Mustafa, 313 F. Supp. 3d at 695. See also Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.").

The court agrees with Judge Hoppe—Kinnett fails to articulate a claim for religious discrimination. Counts One and Two are thus **DISMISSED**.

**B.**

In Count Three, Kinnett alleges he was discriminated against based on his sex. As a preliminary matter, the court agrees with Judge Hoppe that the context of this case makes it clear that Kinnett refers to his sexual orientation, rather than his biological sex. ECF No. 35, at 18. The Fourth Circuit has held that "Title VII does not afford a cause of action for discrimination based on sexual orientation." Wrightson v. Pizza Hut of Am., 99 F.3d 138, 143 (4th Cir. 1996). Fourth Circuit law thus requires the court dismiss this claim. Even if such a cause of action were provided, Kinnett fails to state a disparate treatment claim under Title VII because he has not alleged sufficient facts to show that he was discriminated against because of his sexual orientation.

To establish causation for a sex-discrimination claim under Title VII, the plaintiff must show that his sex was a "motivating factor" in the decision to take adverse action against him. 42 U.S.C. § 2000e-2(m); see Nassar, 570 U.S. at 360–61. The only factual allegations made in the Complaint to establish that Willems' actions were motivated by Kinnett's sexual orientation were that Willems was allegedly uncomfortable during a conversation about Kinnett's husband and that Willems "periodically" asked Kinnett about a concert hosted by a church. ECF No. 1-2, at 6. Judge Hoppe found that "Kinnett 'can only speculate' that Willems was motivated by religious bias against gay men." ECF No. 35, at 19.

The court agrees. Kinnett has alleged only a few passing comments from Willems, none of which explicitly state any bias against Kinnett on the basis of homosexuality and are too few and too vague to plausibly imply such bias. Even if the court assumed that Willems' behavior was motivated by religious bias against homosexuality, all of the above discussed weaknesses of Kinnett's Complaint apply here with equal force. Willems' behavior or alleged

15

bias cannot be attributed to Sotera, cannot be connected to a specific pattern or practice's disparate impact on Kinnett, and did not rise to the level of severe and pervasive. Count Three is **DISMISSED**.

## C.

Finally, Kinnett alleges that Sotera retaliated against him in violation of Title VII for having complained about religious and sex-based discrimination. To state a retaliation claim under Title VII, a plaintiff generally must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman, 626 F.3d at 190. A plaintiff is also protected under this provision when he complains of actions that are "not actually unlawful under Title VII," so long as he plausibly alleges "'an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress.'" Cf. Strothers, 895 F.3d at 327 (discussing the standard on summary judgment) (quoting Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 282 (4th Cir. 2015) (en banc)).

Sotera argued, and Judge Hoppe agreed, that Kinnett failed to show a causal link between his complaint of discrimination and his termination. The court agrees as well. Kinnett states in the Complaint that, after he complained to Sotera, Sotera "took materially adverse actions against [him], including, but not limited to, issuing disciplinary warnings, such as counseling and Performance Improvement Plans; threats of termination; reprimands by supervisors; and termination." ECF No. 1-2, at 13. Kinnett does not allege any facts beyond the "conclusory assertion" that he made formal and informal complaints to Sotera. Beyond a vague assertion that he discussed a "constructive discharge attempt" with Roy Plant, the

Complaint does not identify any complaints about class-based discrimination. As Judge Hoppe states:

> "[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." Id. at *16 (quotation marks omitted). Though Kinnett may have told Plant that Willems made false allegations against him via Dillon's email, Willems did not like Kinnett, and Sotera employees were acting in contravention of the personal services contract, these accusations, standing alone, would not put Sotera on notice of unlawful activity under Title VII.

ECF No. 35, at 20. Kinnett's objections to the Report and Recommendation allege another complaint made to Hess. As stated above, however, the nature of this complaint and what exactly Kinnett reported is too vague to sustain Kinnett's claims. Count Four is **DISMISSED**.

## III.

Kinnett's motions (two motions for leave to amend and a motion for a court ruling on his joint employment status) are addressed below.

## A.

Kinnett filed two motions requesting permission to amend his original pleading. ECF Nos. 25 & 30. Specifically, Kinnett alleges that he filed a Freedom of Information Act ("FOIA") request with the OFCCP for information concerning their investigation of his charge, but he did not receive responsive material until after his Complaint was filed in August 2018. Id. Though courts are to "freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15 (a)(2), motions to amend may be denied where "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or

the amendment would be futile," Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

Kinnett's first proposed amendment alleges that Sotera "defrauded [him] by means of false and defamatory sworn statements provided to the OFCCP investigator." ECF No. 30-2, at 72. To state a claim for common law fraud in Virginia, a plaintiff must establish "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Winn v. Aleda Constr. Co., 277 Va. 304, 308, 315 S.E.2d 193, 195 (1984). Kinnett identifies a series of allegedly false statements that Sotera employees made to OFCCP during the investigation of his discrimination charge but did not identify any false statements that he himself relied upon to his detriment. See ECF No. 31-2, at 14–15. Thus his first proposed amendment fails to state a claim of actual fraud.

Kinnett's second proposed amendment adds a paragraph to his hostile work environment claim alleging that "[t]he FBI had created a hostile work environment including threats of physical violence" and he was "intimidated from making complaints regarding FBI employee's [sic] unlawful supervision of [Sotera's] employees." ECF No. 31-2, at 15–16. Kinnett's proposed pleading does not offer much in the way of detail regarding these threats, but does cite generally to his attached OFCCP charge in which he describes a threat from an FBI employee to "beat the shit out of [him]" over a scheduling dispute. ECF No. 1-3, at 15–16. Kinnett does not, however, allege any connection between this threat and his religion or sexual orientation. This comment actually seems to have been made before Kinnett ever began

working with Willems, and logically could not have been related to any of Kinnett's allegations of discrimination.

In his Objections, Kinnett argues that he did rely on the allegedly false statements provided to OFCCP investigators in that he "relied on the Defendant to provide truth statements regarding his employment and termination to the OFCCP investigators acting as his agent as required by law." ECF No. 37, at 5. Kinnett argues that the false statements provided negatively influenced the investigation, and that his reliance on "the process mandated by law to protect his rights" satisfies the elements of a common law claim of actual fraud. Id. Kinnett misconstrues these elements—to state a claim for actual fraud, Kinnett must plead reliance by the individual who was misled. Actual fraud requires a Kinnett plead an intentional, false representation, and that the party that was misled relied on that representation. Winn, 277 Va. at 308, at 315 S.E.2d at 195. A general reliance on others to tell the truth will not suffice.

Kinnett's motions to amend are **DENIED**.

## B.

Finally, Judge Hoppe found that Kinnett's motion requesting that "the Court rule on the Plaintiff's claim of Joint Employment status with [Sotera] and the [FBI] in violation of 48 CFR 37.104," ECF No. 28, should be denied. After observing that the motion, while not recognized by the Federal Rules of Civil Procedure, could be construed as a Motion to Amend to add allegations related to Kinnett's joint employment status, Judge Hoppe found that such an amendment would be futile. The Fourth Circuit has held that the joint employer doctrine can be applied to claims under Title VII. Butler, 793 F.3d at 408–10. The purpose of the

doctrine is to "prevent[] those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency." Id. The doctrine is inapplicable to the facts at hand, however. Even if the FBI and Sotera were Kinnett's joint employers, neither could be held liable under Title VII, for as Judge Hoppe reasoned:

> Kinnett's factual allegations, accepted as true, do not support a reasonable inference that he suffered some adverse employment action because of his sex, sexual orientation, non-conformance to a supervisor's religious scruples, or participation in protected activity. His hostile work environment claim fails because the facts alleged do not show he was subjected to "severe and pervasive" harassment, humiliation, or intimidation. Kinnett's "joint employment" status cannot cure those defects.

ECF No. 35, at 23. Judge Hoppe recommended that Kinnett's motion be denied.

In his Objections to the Report and Recommendation, Kinnett cites to Staub v. Proctor Hospital, 562 U.S. 411 (2011), which deals with the "cat's paw theory" in the context of the Uniformed Services Employment and Reemployment Act ("USERRA"). The USERRA, which the Court referred to as "very similar to Title VII," provides that a person who is a member of or has an obligation to perform service in a uniformed service cannot be denied employment or be discriminated against in their employment on account of their obligation. Id. at 416. The plaintiff in Staub was a member of the United States Army Reserve, which required him to attend drill one weekend per month and train full time for two to three weeks a year. Id. at 413. The plaintiff brought suit against his employer for his termination. Id. at 415. The termination resulted from a complaint made by the plaintiff's immediate supervisor, who had shown hostility towards the plaintiff's service due to the work he missed to report for duty, to the head of human resources. Id. at 414. The complaint was unrelated to the plaintiff's

military duties, and the head of human resources did not share the supervisor's resentments. Id. Kinnett draws attention to the Court's ruling that, though the decision to fire the plaintiff was not made by a biased individual, it was made on the basis of a complaint motivated by bias. Id. at 422–23. The cat's paw theory, permitting the plaintiff to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision, thus applied. Id.

Even assuming the "cat's paw" theory could be applied to a Title VII action, and assuming such a theory is relevant in the determination of Kinnett's alleged joint employment status, it is inapplicable to the facts at hand. As Staub establishes, to hold an employer liable under this theory, the earlier agent must be motivated by bias to take some action to influence the ultimate decisionmaker, intending to bring about the adverse employment action. Staub, 562 U.S. at 419. Kinnett has not alleged these facts. Kinnett's complaint alleges only an awkward interaction with Willems, later difficulties in the development of the BOSU Helpdesk project, conflicts with other employees that appear to be unrelated to Kinnett's difficulties with Willems, and his termination by Louch, allegedly at Willems' request. Even assuming that Willems did request Kinnett be terminated, Kinnett has not pled sufficient facts to show that this request was motivated by discriminatory animus. As discussed above, the few facts pled regarding Kinnett and Willems' first conversation about Kinnett's husband and Willems' church and Willems' later remarks regarding the church are not sufficient to infer discriminatory animus, or that such an animus motivated Willems to bring about Kinnett's termination.

The reasoning articulated in <u>Staub v. Proctor</u> is inapplicable to this matter. Kinnett's motion is **DENIED**.

## VI.

For the reasons explained above, the court **DENIES** Kinnett's motions, ECF Nos. 25, 26, & 30; **OVERRULES** Kinnett's Objections, ECF No. 37; **ADOPTS in its entirety** Judge Hoppe's Report and Recommendation, ECF No. 35; and **GRANTS** Sotera's motion to dismiss, ECF No. 2.

It is **so ORDERED**.

Entered: 08-26-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge